The attorneys who are going to orally argue, will you please come up to the podium and introduce yourselves to the court. Good morning, your honors. My name is Frank Roland from the firm of Rice, Downey & Weinkauf. I'll be arguing on behalf of plaintiff appellants. Mr. Roland, appellant. Good morning, my name is Mary Bluma and I'll be arguing on behalf of the defendant appellees in this manner. Thank you. Both of you will have 15 minutes to argue. Appellant, please reserve from that 15 minutes whatever time you'd like to apportion for a rebuttal. Appellant, you may proceed. Thank you, your honors. May I please the court. With me today is Ms. Jean Hoffman, my colleague who was present during the entirety of the trial, did most of the pleading work. I'd like to introduce her to the court, Ms. Bluma. Your honors, this matter comes before you following eight years of litigation in the trial court, 19 volumes merely of the common law record. That number excludes the testimony of some 22 witnesses, many of whom, most of whom, the majority of whom were taken by means of an interpreter. It was, I think, fair to say a lengthy trial. Were it compressed, it would have been taken about a month long. It resulted in a lengthy decision by Judge Jacobius, our trial judge. And we find ourselves here in the somewhat unusual posture of not arguing what happened in the court below, but arguing instead what did not happen. So you're here asking us for your relief. Your honor. Your relief is that you want you want some court to order the church to hold a meeting and election. That is correct, your honor. Reduced to the nutshell, yes. Right. And you're not asking us to review what Judge Jacobius found. That is correct, your honor. And what Judge Jacobius found, as I read his order in the record. Yes. Is that the plaintiffs were not members of the church because the church was under the operating under the Constitution of the diocese. And under the ecclesiastical abstention doctrine, he was not entitled to nor were the courts to go behind what the religious leaders found. And that was that the plaintiffs were not members of the church. Correct. That is partially correct and partially incorrect, your honor. Well, in any event, I'm not trying to evade your question. Well, but in any event, he made these findings and said, therefore, because of the ecclesiastical abstention doctrine, I am not going to go behind what the church decided. And therefore, you're not members of the church. That's what they decided. And if you're not a member of the organization, you don't have standing under the Not-for-Profit Act to demand that this organization that you're not a part of hold a meeting. That, in essence, is what he ruled, wasn't it? I disagree to one extent, but it's a very important extent. He ruled that various board members were rightfully excused. He did not rule, at least to my understanding, and I was there for the whole thing, he did not rule that every last plaintiff of the eight named were excluded, were excommunicated, were not entitled. I do not read his opinion that way. And when we went in to ascertain the nature of this non-ruling, there was no mention of that by the court. And if I am, you know, that's about the best way I can answer your question, I believe, Your Honor. We're obviously concerned with the standing issue, but we do not believe that he said that none of these people were members of the church. We do concur with... Did he rule that any of them were members of the church? He did not, Your Honor, but it was essentially stipulated. A number of them testified that they were... I don't want to make a statement that may not be completely accurate. They filed the case. Mr. Ivanoff, for example, the president, was removed as the president. There was no finding by the court that he was removed as a member. The same was true of Mr. Gurkoff. And there was no ruling at all on any of the remaining plaintiffs, again, to the best of my recollection, which I think is accurate. We are concerned with the standing issue, Your Honor. We think that it has been, by virtue of stipulation before the trial court, and again, by virtue of essentially non-ruling by the trial court, there is no holding that each and every plaintiff is a non-member. Mr. Roland? Yes, Your Honor. Each of these plaintiffs, were they alleging that neither of them were allowed into the meeting? Yes, Your Honor. So doesn't it stand from the testimony that the parish priest had determined that only the members of the members in good standing would receive a notice for the subsequent meeting? And if these individuals then did not receive a notice, the court properly drew the inference that they're not members in good standing. Your Honor, I think the one-word answer is no. These members, bear in mind that part of the portion of the appeal, and part of what was discussed, is there has never been an election up through the time. So people did show up to vote, including the plaintiffs, including the defendants, but no election was ever held. There has been no, and the evidence is clear. But there isn't a requirement that members be elected, correct? So I guess I'm asking you, what then do you think the process is under the church for determining who is a member in good standing? Your Honor, the stipulation entered, and I'll refer to that, was that there were members at the time of the events which were the subject of the trial, as well as inferentially here today. The requirement for membership under the formation of the church and up through and including 2003, excluding the events that are before you, was that you paid dues, which unquestionably people did. That you filled out a membership application, which was also unquestioned. I think it's referenced in the trial judge's comments and opinion. And if I understand your question, Your Honor, that is how you became a member, and for a period of That's not actually, that's part of the question, but it isn't. There's a difference between becoming a member and remaining a member. So to continue your membership, you must continue your financial obligations. You have to satisfy all the other requirements, including an obedience, correct, to the clergy elders that are in charge of the church. Your Honor, I would disagree that that is what was required. I would disagree that that's what occurred. And I guess, inferentially again, I would disagree that Judge Jacoby has held that. Nobody, to my knowledge, with the possible exception of George Ivanoff, the president, who was removed as a board member, had their membership rights terminated through any action of the church. There were various people that were excluded from the premises. Now, that included people over and above the plaintiff, not just the plaintiff. There was an original list that was compiled in the manner that it had been for the eight years preceding these events. That was a membership list. There was apparently a different list compiled by various of the defendants and nominally the church. But again, your question seems to imply that there needs to be a recurring membership process and renewal, and that is not in the record. It is not in the facts, and it was not found by the court. Let me ask you this, then. Are you indicating that your plaintiffs or clients did not recognize a removal process other than a congregational process? Your Honor, I think it's fair to say that there was really nothing to recognize. It had never been undertaken up to that point. There's nothing in the church constitution. Wasn't there testimony that the priest had prepared a list of those individuals he considered to be in good standing? Thereafter, yes. So you're saying it occurred after Mr. Ivanoff attempted to call the meeting? Correct, Your Honor. Did I answer your question? I hope so. Justice Pierce, I think I concluded my answer, if you were. Go ahead. All right. I think the issues that are before this Court is really singular with a couple of subparts, and that realistically is should Judge DeCobias have ordered a meeting in the face of everything. The position of — Or alternatively, was his ruling improper? Your Honor, there really wasn't a ruling on that. So, again, I'm not trying to be evasive to your question, nor do we think — Well, the circuit court said that the parish priests and the archbishop are not members entitled to vote supporting them, right? I'm sorry, I missed the last part. The determination of the circuit court below was that the parish priest and the archbishop indeed had the power to determine who were members and who were entitled to vote. That is correct, Your Honor. Okay, and you've got all these old, old cases that we have to accept, I guess it's persuasive, that the ecclesiastical abstention cases — Certainly, Your Honor. Traditionally, courts are very, very wary of going into this area conducting a review of church member qualifications. We agree, Your Honor. So how did DeCobias go wrong here? He's a pretty sharp guy. He knows what he's doing up there, I think. Where'd he go wrong? Your Honor, let me address your question by saying that's not an issue. We are asking this Court to order an election. We are asking you to do that by virtue of the Not-for-Profit Corporation Act that requires an annual meeting and election. We are also asking you to do it by virtue of the Church Constitution, which Judge DeCobias did in fact find was a part of this case. The Church Constitution not only says there will be an election, it says when it will be. It will be on any Sunday in November. And we are asking this Court to order that that election take place. We are not asking this Court to make any kind of determination as to who is to vote at that election. We are not asking you to invade any religious grounds. The ruling of Judge DeCobias is that he was not going to go into that. He could not for the reasons that you mentioned, for the separation basically of church and state. So it's very important. We are not. We are asking for a day at the polls. We are not asking for this Court to adjudicate who is entitled to vote. We are certainly not asking this Court to determine who can run for office. We are not asking you to do anything that would have the slightest bit of infringement on membership rights, voting rights, qualifications. We are merely asking that a meeting be held in accordance. What standing do you have to ask for that? That's the whole question. If Judge DeCobias, as I read his order, found that the church has the right to decide who is and who is not a member, that they found that the plaintiffs were not members, therefore, you don't have standing to ask for that. Now, that's what the business or the Not-for-Profit Act contemplates. It contemplates members of the group should be able to force the group to have actions in accordance with their Constitution. It doesn't contemplate some guy walking down the street saying, gee, I wonder if they ever had a meeting. No, they haven't. I'm going to go to court and force them to have a meeting when I have no standing or interest in the proceedings. So did Judge DeCobias rule that because the church operated under a church constitution, and they decided that membership wasn't properly constituted, therefore, he wasn't going to deal with that because he wasn't allowed to, and therefore, he couldn't order anything because the people asking weren't members? Your Honor, I think the answer, again, is no. He did not do that, and it's not subsumed in his decision, and it's not implicit in his decision. Well, what's implicit when he says the plaintiff's complaint is dismissed in its entirety? There's no question about what that means, Your Honor. None, whatever. And you chose to emphasize in your brief that you're not contesting the lower court ruling. You just want the relief that you didn't get. Well, yes, Your Honor, and you're questioning our right to even request that relief, and I understand that. Let me go back, and we do have to get into some facts and some trial court items. There was not any ruling that a particular member, be it old class or new class, ruling was not entitled to vote, had lost their membership. There was unquestionably, Your Honor, a difference between the lists of eligible voters that had theretofore, for the entire eight-year existence of the Church, existed and those which came into play by virtue of the acts of others. Realistically, and again, I want to emphasize there's no dispute as to that. That element of the dispute was never brought to a head for the simple reason that there was never and has never still been an election. The bishop came in, and he stifled the first. Judge Jacobi's founders, but no election. Correct, Your Honor. Okay, so we know that. All right. We're bound by that. Pardon me, sir? We and you are bound by that. At this point, I agree. Okay, so no. At any point, I agree. Yes, I agree. Okay, well, focus on the issue then. We know there's been no meeting. All right. Who has a right that demanded a member? We are not. I'm going to answer that. I believe in the alternative. Judge Jacobi's did not rule on that, and we are not asking this Court to rule on that or to mandate that Judge Jacobi's rule on that. He's already made that decision. We are not. We don't agree with that decision, but we are not contesting it. Judge Jacobi's, assuming you give us the relief that we are requesting of you today, it goes back. Judge Jacobi's will, consistent with his order, say, okay, here's where the election will be. I am not getting involved on who gets to vote at that election. I cannot. I have already made the finding. I have looked at the documents. I cannot and will not get involved in that. There we have a head-on but between church and state, which, I guess for lack of a better way to put it, church wins. I'd like you to have at least five minutes for your rebuttal. Thank you, Your Honor. I will accept that suggestion. Thank you, Mr. Rowe. Thank you, Your Honor. Good morning. May it please the Court. I'd like to address this Court's question asking Mr. Rowland, how did the Circuit Court properly apply the law to this case in determining that the plaintiffs were entitled to any equitable relief in this case? The first point is that the trial court properly invoked the religious abstention doctrine in this case, and he refrained from imposing the Court's determination in the governance of St. John's. It appears that the Court is pretty familiar with the issues of this case, and I would just like to point out our position again, which it appears the Court has read our briefs and understands our position. Your Honors, the issue in this case involved which church members were in good standing and thus eligible to vote in the election of the church board at the annual meeting. Your Honors, I'd just like to discuss the applicable precedent. The neutral principles of law analysis was discussed in this First District's decision in Abrams First Watchtower Bible and Track Society of New York. As the Court is well aware, the neutral principles of law approach allows the Court to interpret provisions of religious documents involving property rights and other non-doctrinal matters to the extent that the analysis can be done purely in secular terms. For example, the neutral principles of law allows the civil court to determine property ownership disputes by applying general principles of law. They can examine local church charters and any state statutes governing the holding of church property or other pertinent documents. Your Honors, in this case, the trial court did, in fact, apply neutral principles of law. In fact, the plaintiffs moved for partial summary judgment on this matter, indicating that the Court did have jurisdiction to hear this case. And in the trial court's order, he indicated he would apply neutral principles of law at trial and he would review the Illinois not-for-profit law, the church constitution, and all other applicable regulations within the church pertaining to this case. After 18 days of trial, the Court properly invoked the religious abstention doctrine because it was unable to apply a neutral procedure for the election of the board because it involved determining who was qualified to be a church member in good standing according to the decisions and ecclesiastical rules of a hierarchical church. Your Honor, I would just like to briefly point out some of the pertinent provisions of the church constitution which required the circuit court to invoke the doctrine as he did under the First and Fourteenth Amendment. I'm sure as this Court is well aware, in the U.S. Supreme Court case of Watson v. Jones, the Court held that, with respect to hierarchical churches, the questions of discipline, faith, and ecclesiastical rule, custom, or law decided by the highest church judicatory must be accepted as final binding on the civil courts. The other main precedent, serving Eastern Orthodox Diocese v. Milosevic, the U.S. Supreme Court held that the First and Fourteenth Amendments mandate that civil courts shall not disturb the decisions of the highest ecclesiastical tribunal within a church or hierarchy of polity, but must accept such decision as binding on them and their application to the religious issues of doctrine or polity. Your Honor, I just want to point out some of the relevant provisions of the church constitution in this case which required the circuit court to invoke the religious abstention doctrine under the First and Fourteenth Amendment. Article 8, Section 2 states, No person shall be accepted for membership in a parish who defies the jurisdiction or the ecclesiastical authority of the diocesan prelate bishop or who deliberately disregards and transgresses the moral law as may be determined by the ecclesiastical tribunal, the spiritual council. Article 3, Section 3 states, The archbishop is the head of the spiritual and administrative life. Your Honor, there was ample evidence at trial that certain members, including the plaintiffs, defied the ecclesiastical authority of both the priest and the archbishop, which is why the circuit court was compelled to invoke the religious abstention doctrine in this case. Ms. Bluma? Yes. Excuse me for interrupting, but let me ask you a question. Yes. Counsel appears to me to be arguing all we want is a meeting. Yes. So all we want is a meeting. Maybe the people who think they have the right to vote legitimately can be restricted not to vote. But give us a meeting. Right, Your Honor. So what's your argument against that? Your Honor, in fact, there was a meeting that was held in 2004. There was not a vote that took place because the evidence at trial established that there was a disagreement over which members were eligible to attend this meeting and vote at this meeting. So the archbishop came to this meeting and held a meeting, however, a vote did not proceed because there was a major disagreement over who was entitled to vote, which ultimately the archbishop and the parish priest have the jurisdiction to determine which members should have came into this meeting and voted. So you're saying they've had their meeting. They've had their meeting, Your Honor. And in addition to that, there's nothing in the Illinois not-for-profit law that requires an annual election meeting to be held. Is there anything in the Constitution that requires a regular meeting or a regular election? Yes, Your Honor. In the general uniform parish regulations contained in the Constitution, it states that an annual election meeting may be held in November, I believe, Sunday in November at the church. But then the general uniform parish regulations also go into all the requirements for this meeting and give authority to the parish priest to determine that it was conducted in accordance with the regulations in the Constitution. The parish priest is the one that determines and gives notice to members that are eligible to vote. So yes, Your Honor, if you review the general uniform parish regulations contained in the last part of the Constitution, there's all the provisions and requirements surrounding annual election meetings. The Illinois not-for-profit law, again, there's nowhere in the requirements that it says there has to be an annual election meeting. The Illinois not-for-profit law essentially defers to the corporation's bylaws, Section 107.05 states, which is quoted in the plaintiff's brief. An annual meeting of the members entitled to vote may be held at such time as may be provided by the bylaws or in a resolution of the board of directors pursuant to authority granted in the bylaws. Your Honor, there were no bylaws adopted in this case. There was only the church constitution, which the circuit court determined was the governing document over the affairs and administration of the church. Your Honor, essentially, the circuit court was correct in its determination and its ruling that this case involved a religious, the religious abstention doctrine. The U.S. Supreme Court was very clear in the Serbian Orthodox case. In the ruling, they state, religious freedom encompasses the power of religious bodies to decide for themselves free from state interference, matters of church government, as well as those of faith and doctrine. Your Honor, this is exactly what the circuit court did. It gave the church the ability to decide how to manage an annual election meeting when there was a disagreement over which church members were allowed to attend and vote at this meeting. Ultimately, the church constitution gave the priest the final say on who was qualified to vote. This encompassed many religious requirements, as you'll see in parts of the constitution. I'll direct Your Honor's attention to the constitution, which is attached to our brief, Article 8, Sections 1 through 6, provide detailed requirements surrounding members in good standing. So the circuit court was correct in its determination because, ultimately, the priest had the final say on whether the election was conducted in accordance with the church regulations, and the civil court should not disturb such ecclesiastical decisions in this case. Is it your position that the church hierarchy could determine never to hold an annual meeting? Your Honor, as of now, the Archbishop can. Yes, he's the head of the diocese. He has spiritual and administrative jurisdiction over this church, yes. I think that the Archbishop, the priest ultimately has the authority to do that too because the priest had a say in if the election was conducted in accordance with the church rules. There was religious requirements to the meeting. There was a prayer that was held. The priest started the meeting, and then he basically led the meetings. Does the Illinois Not-for-Profit Act authorize the compelling of an annual meeting in the event of a church saying we're not going to hold annual meetings? Your Honor, there's nothing in the Illinois Not-for-Profit Law that states that. No, Your Honor. Again, as I stated, the Illinois Not-for-Profit Law simply says that an annual meeting may be held according to the corporation's bylaws, any rules that they decide and put in their bylaws. In this case, there were no bylaws. There was a church constitution, and the church court properly deferred to the ecclesiastical decisions that were already determined in the church constitution regarding annual election meetings and who was eligible to vote at these meetings. So under your view, if a church constitution provided for an annual meeting every July 1st, and it was incorporated under the Illinois Not-for-Profit Corporation Act, the Illinois Not-for-Profit Corporation Act could not be used to compel that July 1st meeting? Because it's optional? Your Honor, if there's religious requirements that are attached to that meeting, yes, I agree. I don't think that the Illinois Not-for-Profit... I forget what's attached to the meeting. If the constitution of the church says hold a meeting once a year, and the church is incorporated under the Illinois Not-for-Profit Act, could the Illinois Not-for-Profit Act be used to compel the church to comply with its constitution to hold a meeting once a year without getting into what the church is going to talk about? If the constitution says once a year, the statute says do it. Is that true? Your Honor, it's true in the sense that the courts can review the church constitution and make sure that all the requirements are met regarding, you know, the holding of an annual election meeting every July every year. But I don't think there's anything in the Illinois Not-for-Profit law that mandates that, you know, he has to enforce this. I guess, I'm sorry, if you could just... I'm sorry, I'm not clear on your question. The issue in this case is a church member purportedly, a church member says, the church constitution says we're supposed to have an annual meeting once a year. The church isn't holding the annual meeting. What do I do? I'll go to the Illinois Not-for-Profit Corporation Act of which the church decided to incorporate under and use that to force them to do what their constitution says they must do. That's the only way I can force my church to hold its self-imposed constitutional obligation to hold a meeting once a year. Right. Is that okay? Yes, Your Honor, I think it's okay. Okay, so why didn't Judge Jacobius do that here if he found that no church meeting had been held for ever? Because, Your Honor, he deferred to the decision of the Archbishop to... Which was what? To postpone the annual election meeting when there was this disagreement amongst the members of who was entitled to vote, particularly when... Did Judge Jacobius find that the plaintiffs in this case were not members because the church decided they weren't members? Yes, Your Honor, because there was plenty of evidence that showed that the plaintiffs defied the ecclesiastical authority of this church and therefore were entitled to participate in the annual election meeting. And that comes under Judge Jacobius' global statement of I deny the complaint in its entirety? Yes. That that included I deny the statement that you are members of the church? Yes, Your Honor, because he denied the complaint in its entirety and didn't, you know, afford the plaintiffs any equitable relief at all in its entirety. Because they were not members. Because they were not members. Because they were decided by the church. Yes. Yes, Your Honor. So that's it in a nutshell. Yes, Your Honor. If there's any other questions, I can clarify any other issues of the court. Please. Thank you, Your Honor. I have a brief question. Yes.